**Tara B. GERMAIN, Plaintiff,**

v.

**The COUNTY OF SUFFOLK, Commissioner Ronald F. Foley, individually and in his official capacity as Commissioner of the Suffolk County Parks Department, and David Brewer, individually and his individual capacity as Chief of the Suffolk County Park Police, Defendants.**

No. 07–CV–2523 (ADS)(ARL).

United States District Court, E.D. New York.

Dec. 5, 2009.

Law Offices of Janice Goodman, by Janice Goodman, Esq., Of Counsel, New York, NY, Devitt Spellman Barrett, by Jeltje DeJong, Esq., Of Counsel, Smithtown, NY, for Plaintiff.

Legal Momentum, by Gillian Thomas, Esq., Of Counsel, New York, NY, for Plaintiff.

Christine Malafi, Suffolk County Attorney, by Chris Termini, Assistant County Attorney, Hauppauge, NY.

SPATT, District Judge.

On June 22, 2007, Tara B. Germain ("the Plaintiff"), a Suffolk County Park Department police officer, commenced this pregnancy and gender discrimination lawsuit against the County of Suffolk, Suffolk County Park Department Commissioner Ronald F. Foley, and Suffolk County Park Department Police Chief David Brewer. On July 6, 2009, after a seven-day trial, a jury found that a Suffolk County Park Department policy which limited light-duty assignments only to officers who suffered on-the-job injuries had a disparate impact upon pregnant officers in violation of 42 U.S.C. § 2000e et seq. ("Title VII"), and N.Y. Exec. Law § 296 et seq. The jury also found that Suffolk County retaliated against the Plaintiff for filing the instant lawsuit by refusing to permit her husband,

a Suffolk police officer, to transfer his accrued sick time for her benefit. However, the jury determined that the Plaintiff's gender was not a motivating factor in the Park Department's decision to pass her over for a promotion to sergeant. Presently before the Court is the Plaintiff's motion for an award of attorneys' fees and costs pursuant to Title VII. 42 U.S.C. § 2000e–5(k).

## I. BACKGROUND

Familiarity with the issues in the case and this Court's decision on the parties' cross-motions for summary judgment is assumed. *See Germain v. County of Suffolk*, No. 07–CV–2523, 2009 WL 1514513 (E.D.N.Y. May 29, 2009).

## II. DISCUSSION

In calculating reasonable attorneys' fees, courts in the Second Circuit are now guided by *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182 (2d Cir.2008) ("*Arbor Hill*"). In *Arbor Hill*, the Second Circuit purported to clarify the methodology district courts should employ in calculating statutory attorneys' fees. *Id.* at 190. The Second Circuit moved away from the traditional use of the lodestar method of calculation and advised that, in determining a "presumptively reasonable fee," district courts should "bear in mind all of the case-specific variables that we and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate." *Id.*

In the wake of *Arbor Hill*, "the presumptively reasonable fee is calculated by setting a reasonable hourly rate that reflects what rate a paying client would be willing to pay, and multiplying that rate by the number of hours reasonably expended litigating the case." *Joe Hand Promotions, Inc. v. Martinez*, No. 07–CV–

6097, 2008 WL 4619855, at *7 (S.D.N.Y. Oct. 17, 2008); *see Finkel v. Omega Commc'n Servs., Inc.*, 543 F.Supp.2d 156, 164 (E.D.N.Y.2008) (citing *Arbor Hill*, 522 F.3d at 189) (noting that the "presumptively reasonable fee" is "comprised of a reasonable hourly rate multiplied by a reasonable number of expended hours."). "After calculation of the presumptively reasonable fee, the court must then consider whether an upward or downward adjustment of the fee is warranted based on factors such as the extent of plaintiff's success in the litigation." *Vilkhu v. City of New York*, No. 06–CV–2095, 2009 WL 1851019, at *1 (E.D.N.Y. Jun. 26, 2009) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 434 n. 9, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). The Court will begin its discussion with an analysis of the reasonable hourly rate for each attorney that represented the Plaintiff in this litigation.

### A. The Reasonable Hourly Rate

The Plaintiff was represented initially by Jeltje DeJong and Kelly Wright of the law firm of Devitt Spellman Barrett LLP. On June 28, 2007, United States District Judge Leonard Wexler, who had previously been assigned to this case, disqualified DeJong and her firm on the basis that she had formerly served as a Bureau Chief in the Suffolk County Attorney's Office during a time when a related case was pending. *See Lochren v. Suffolk County*, No. 01–CV–3925, 2008 WL 2039458 (E.D.N.Y. May 9, 2008). On August 16, 2007, the Plaintiff retained Janice Goodman to represent her in this case. In preparing for the trial, Goodman was assisted by Gillian Thomas, Naomi Shatz, and Naveen Kabir, attorneys at Legal Momentum. The following chart provides a summary of the proposed hourly rates for each of these attorneys:

| Name | Proposed Hourly Rate |
| --- | --- |
| Janice Goodman | $600 |
| Gillian Thomas | $300 |
| Naomi Shatz | $125 |
| Naveen Kabir | $125 |
| Jeltje DeJong | $200 |
| Kelly Wright | $200 |

Although Suffolk County does not challenge the rates proposed by DeJong and Wright, it contends that the rates proposed by Goodman and the three Legal Momentum attorneys should be reduced as follows:

| Name | Hourly Rate Proposed by Suffolk County |
| --- | --- |
| Janice Goodman | $275 |
| Gillian Thomas | $150 |
| Naomi Shatz | $100 |
| Naveen Kabir | $100 |

■ As noted above, the Second Circuit teaches that the "reasonable hourly rate is the rate a paying client would be willing to pay." *Arbor Hill*, 522 F.3d at 190. There is a presumption that a district court should award fees at the prevailing market rate in the district in which it sits. *Id.* at 190 (citing *Polk v. N.Y. State Dep't of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir.1983)). In order to overcome the presumption in favor of this forum rule, a prevailing party must show "that a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result." *Simmons v. New York City Transit Auth.*, 575 F.3d 170, 175 (2d Cir.2009). The Second Circuit has observed that "[a]mong the ways an applicant may make such a showing is by establishing that local counsel possessing requisite experience were unwilling or unable to take the case." *Id.* at 176 (citing *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 226, 232 (2d Cir. 1987)). Here, Goodman and Legal Momentum are based in Manhattan and contend that they should be compensated at hourly rates consistent with rates awarded

in the Southern District of New York. The Court agrees.

The Plaintiff initially paid $7,500 to retain the services of Devitt Spellman Barrett LLP. After DeJong and her firm were disqualified, the Plaintiff contacted several other law firms in Nassau and Suffolk County. According to the Plaintiff's sworn affidavit, one prominent firm in Nassau County would only take her case on an hourly fee basis and required a $15,000 retainer that she could not afford. After a phone consultation with the Plaintiff, another prominent Suffolk County law firm told her that it would only take her case if she agreed to pay a substantial retainer. The Plaintiff contacted several other attorneys whose names she could not recall but none responded to her inquiries.

The Plaintiff proceeded in the case pro se and argued her motion for a preliminary injunction before Judge Wexler on July 17, 2007. After her motion was denied, the Plaintiff contacted the New York Civil Liberties Union ("NYCLU") about the possibility of representing her in this case. The NYCLU declined to take the case, citing its representation of the plaintiffs in *Lochren*, but referred the Plaintiff to Goodman. After a consultation, Goodman agreed to take the Plaintiff's case on a contingent basis.

■ On these facts, the Court finds that the Plaintiff has met her burden to show that it was necessary for her to retain out-of-district counsel. After DeJong was disqualified and other local civil rights attorneys in Long Island declined to take the case on a contingent basis, the Plaintiff was faced with the choice of proceeding pro se or retaining out-of-district counsel. Under the circumstances, it was reasonable for the Plaintiff to believe that Goodman, an experienced civil rights lawyer, could produce a substantially better result

than any relief she might have been able to obtain acting pro se. Accordingly, the Court finds that the conventional forum rule does not apply in this case.

The Court must now look to various case-specific factors to determine the rate a reasonable paying client would pay in this case to a civil rights lawyer practicing in the Southern District of New York. The Court's analysis at this stage is guided largely by the so-called *Johnson* factors. *See Arbor Hill*, 522 F.3d at 187 n. 3 (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974)).

### 1. The Time and Labor Required

■ This case required significant expenditures of time and labor. Upon taking the case, Goodman amended the Plaintiff's complaint. She then handled pre-trial discovery, including six depositions, and filed papers in opposition to Suffolk County's omnibus motion for summary judgment. Goodman also spent a considerable amount of time preparing for the trial initially scheduled before Judge Wexler. When Judge Wexler recused himself and the case was re-assigned to this Court, Goodman and Gillian Thomas spent additional time preparing for the trial by amending proposed jury charges and working on motions in limine. The trial itself lasted seven days. Suffolk County vigorously defended the case at every stage.

It is unsurprising, then, that Goodman, a solo practitioner, was precluded from working on other matters during the course of the depositions and the trial. Under the circumstances, the Court gives these factors serious consideration in determining the reasonably hourly rate.

### 2. The Novelty and Difficulty of the Issues

This is, at best, a neutral factor. Although the issues involved in this case were certainly important, they were not particularly complex. The Plaintiff's disparate impact claim did raise novel issues about the adverse consequences that certain facially neutral employment policies have on pregnant women in the workplace. However, her failure to promote and retaliation claims were run-of-the-mill causes of action.

### 3. Whether the Fee is Fixed or Contingent

For litigation matters, Goodman notes that because her clients are never able to afford an hourly fee arrangement, she takes such cases on a contingency basis. Here, because the Plaintiff was unable to pay an hourly fee, Goodman agreed to rely solely upon court-awarded fees as compensation. Goodman and Legal Momentum invested a significant amount of time and energy without any guarantee of compensation in a case that was vigorously defended. Their willingness to take such a risk on behalf of a plaintiff in a civil rights case should be acknowledged.

### 4. The Experience, Reputation and Ability of the Attorneys

Goodman was admitted to the New York State Bar in 1972. For the past 37 years, she has specialized in employment discrimination litigation. Her affidavit in support of the instant fee application reflects her considerable and impressive experience in litigating civil rights cases. The Court notes that she has taught courses on employment discrimination at Cardozo, Rutgers, and New York Law School. In addition, Goodman has written numerous articles, contributed to practitioner's guides, and lectured extensively on employment discrimination. She also has served as a Vice President and National Executive Board Member of the National Employment Lawyers Association

and was a former chair of the Civil Rights Committee of the Association of the Bar of the City of New York.

Gillian Thomas is a Senior Staff Attorney at Legal Momentum. After graduating from the University of Michigan Law School in 1996, she clerked for a federal judge in Tennessee. From 1998 until 2005, she worked at several different private law firms and gained experience litigating a wide range of employment discrimination claims. She has worked at Legal Momentum since 2005. As a committee member of the Women in the Profession Committee of the New York City Bar Association, she co-authored a report detailing the best practices for hiring and retaining women attorneys. *See* New York City Bar Association, Best Practices for the Hiring, Training, Retention, and Advancement of Women Attorneys (2006), http://www.abcny.org/pdf/report/Best Practices4WomenAttorneys.pdf. She has also co-authored an article for the Yale Journal of Law and Feminism that discusses, among other issues, legal challenges to light-duty policies. *See* Joanna L. Grossman & Gillian L. Thomas, *Making Pregnancy Work: Overcoming the Pregnancy Discrimination Act's Capacity–Based Model*, 21 Yale J.L. & Feminism 15 (2009). Naomi Shatz joined Legal Momentum as a Skadden Fellow in 2008 after graduating from Yale Law School that same year. Naveen Kabir graduated from Georgetown in 2008 and joined Legal Momentum in March of 2009 after working at a private law firm for several months.

It is clear that both Goodman and Thomas have impressive experience in the field of employment law. The Court notes, from its own supervision of the case, that both attorneys proved to be able trial lawyers. Accordingly, this factor weighs in favor of a higher hourly rate.

### 5. Awards in Similar SDNY Cases

Given that the reasonable hourly rate is determined by case-specific variables, a survey of the caselaw does not necessarily yield a precise measure of what the fee award should be in this case. Nevertheless, a review of the fees awarded in other civil rights cases in the Southern District can be useful in establishing the appropriate range of hourly rates. The Court's review of the caselaw reveals that hourly rates awarded to civil rights attorneys with significant experience have recently ranged from $425 to $600. The Court has also found that rates for civil rights litigators with experience comparable to Thomas have been approximately $300. *See Rozell v. Ross–Holst,* 576 F.Supp.2d 527, 546 (S.D.N.Y.2008) (awarding a civil rights attorney with experience comparable to Goodman a fee award of $600 per hour and awarding $350 per hour for lawyers with less experience than Thomas in a Title VII case that settled before trial); *Wise v. Kelly,* 620 F.Supp.2d 435, 447 (S.D.N.Y. 2008) (finding last year that a civil rights attorney with less experience than Goodman was entitled to an hourly rate of $425 and that an attorney with less experience than Thomas was entitled to a rate of $300 per hour); *Heng Chan v. Sung Yue Tung Corp.,* No. 03–Civ–6048, 2007 WL 1373118, at *4 (S.D.N.Y. May 8, 2007) (finding two years ago that $400 per hour was a reasonable hourly fee for a civil rights attorney with fifteen years of experience and that $300 per hour was appropriate for an attorney with 6 years of experience in a complex class action under the Fair Labor Standards Act); *Kuper v. Empire Blue Cross and Blue Shield,* No. 99–CV–1190, 2003 WL 23350111, at *9–10 (S.D.N.Y. Dec. 18, 2003) (finding six years ago that the lead attorney of a 2–person firm with 35 years of experience should be awarded $425 per hour); *New York State NOW v. Pataki,* No. 93–CV–7146, 2003 WL

2006608, at *2 (S.D.N.Y. Apr. 30, 2003) (finding six years ago that a civil rights litigator with thirty-four years of experience should be awarded $430 per hour).

Here, Goodman and Thomas took the Plaintiff's case on a contingent basis and brought their considerable experience to bear in a hotly contested litigation that required a significant time commitment. All but one of the relevant *Johnson* factors—the difficulty of the issues involved—favors awarding Goodman and Legal Momentum fees toward the upper end of the relevant spectrum. Accordingly, in light of these considerations, the Court finds that Goodman and Thomas should be compensated at hourly rates of $450 and $300, respectively. With regard to Shatz and Kabir, although they are recent law school graduates, the Court finds that the proposed rate of $125 is reasonable. In *Rozell*, 576 F.Supp.2d at 546, a court awarded that same rate for the work of paralegals and in *Wise*, 620 F.Supp.2d at 449–450, a court found that the work of summer associates could be billed out at the same $125 per hour rate. As admitted attorneys, Shatz and Kabir are worthy of a billable hourly rate at least equal to the rates that have been awarded to paralegals and summer associates.

## B. The Hours Reasonably Expended

■ After determining the reasonable hourly rate, a court must evaluate the number of hours reasonably billed to the matter in order to arrive at the presumptively reasonable fee. *Arbor Hill*, 522 F.3d at 189–90. In reviewing voluminous fee applications, it is unrealistic to expect courts to "evaluate and rule on every entry in an application." *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1146 (2d Cir.1983). Therefore, the Court will only evaluate those entries to which Suffolk County has objected. In

order to address Suffolk County's various objections to the billing records, it is useful to start with a chart that provides a summary of the hours billed by each attorney:

| Name | Hours Billed |
| --- | --- |
| Janice Goodman | 411.20 |
| Gillian Thomas | 205.25 |
| Naomi Shatz | 17.75 |
| Naveen Kabir | 18 |
| Jeltje DeJong | 41.90 |
| Kelly Wright | .40 |

■ Suffolk County argues that the Court should reduce by at least ten hours the amount of time Goodman and Thomas billed preparing for the July 2009 trial. Suffolk County believes that the total amount of preparation for the July 2009 trial—26.5 hours for Goodman and 31.75 hours for Thomas—was excessive in that it was duplicative of their earlier preparation for the trial scheduled before Judge Wexler in April of 2009. The Court disagrees. After this Court ruled on the cross-motions for summary judgment, Goodman and Thomas were forced to conduct research in order to revise their proposed jury charges. The Court's rulings on the parties' motions in limine also required additional work. In the Court's view, it was reasonable for both attorneys to spend time reacquainting themselves with the facts of the case even though they had already been prepared to try the case several months earlier.

■ There appears to be a misunderstanding between the parties with respect to the amount of travel time Goodman and Thomas have billed. The Court has previously held, on a number of occasions, that counsel should be compensated for travel time at 50% of their reasonable hourly rate. *See Cioffi v. New York Cmty. Bank*, 465 F.Supp.2d 202, 221 (E.D.N.Y.2006); *Connor v. Ulrich*, 153 F.Supp.2d 199, 203 (E.D.N.Y.2001); *Long Island Head Start*

*Child Dev. Servs., Inc. v. Kearse,* 96 F.Supp.2d 209, 215 (E.D.N.Y.2000); *Luciano v. Olsten Corp.,* 925 F.Supp. 956, 965 (E.D.N.Y.1996), *aff'd,* 109 F.3d 111 (2d Cir. 1997). Here, the Court will halve their actual travel time—31 hours for Goodman and 21 hours for Thomas—in order to adjust for this longstanding rule. This means that Goodman will be credited for 15.5 hours of travel and Thomas will be credited for 10.5 hours of travel.

■ Suffolk County contends that the Court should exclude the time billed by Shatz because there "are no listed work entries included with her name" in the billing records. Dec. In Opposition at ¶ 11. It is well-established that a court may reduce a fee award where the documentation of billable hours is deficient. *See Hensley,* 461 U.S. at 433, 103 S.Ct. 1933. Here, the billing records submitted by Legal Momentum should have included entries detailing the work performed by Shatz. However, Thomas has submitted a sworn declaration indicating that Shatz's 17.75 billable hours were spent researching the admissibility of *Lochren* and working on motions in limine. The Court is satisfied by this level of detail and finds that no reduction is warranted.

■ Suffolk County also requests that the Court exclude the time billed by Kabir because the 18 hours she devoted to the instant fee application are excessive in light of the fact that Goodman and Thomas also billed a total of 18 hours working on this motion. Given the detailed nature of their motion, the Court is satisfied that it was reasonable for three attorneys to spend a total of 36 hours preparing the various materials included in the application. However, the Court agrees with Suffolk County that the 1 hour billed by Thomas in drafting a press release is not compensable.

■ Suffolk County also challenges the time records submitted by Devitt Spellman Barrett LLP. In particular, Suffolk County argues that DeJong should not be credited for time devoted to discussing and researching her apparent conflict of interest. The Court sees no reason to exclude time billed researching the conflict issue. The fact that the conflict was raised by Judge Wexler rather than the Defendants is immaterial. Although only .6 of one hour of her time billed on June 27 and June 28, 2009 was devoted exclusively to the conflict issue, Suffolk County seeks to exclude an additional 4.3 hours billed on those days. However, the Court can perceive no reason—and Suffolk County does not explain—why the other time entries from those days should be excluded. It is apparent from the billing records that the other 4.3 hours were expended in connection with the order to show cause. These are perfectly legitimate entries.

In addition to disputing certain entries in the billing records, Suffolk County contends that the Court should apply a 20% across-the-board reduction in fees to reflect the fact that the Plaintiff was not successful in pursuing her failure to promote claim. The Court agrees that a 20% reduction is appropriate here.

■ The Supreme Court has observed that the "results obtained" is a "particularly crucial" factor in deciding the reasonableness of a fee award. *Hensley,* 461 U.S. at 434, 103 S.Ct. 1933. In determining the appropriate reduction, the analysis centers "on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.* at 435, 103 S.Ct. 1933. Where "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Id.* at 436, 103

S.Ct. 1933. This may be the case "even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith." *Id.* The Supreme Court has cautioned that this principle is even more important in civil rights cases "involving numerous challenges to institutional practices or conditions" because "[a]lthough the plaintiff often may succeed in identifying some unlawful practices or conditions, the range of possible success is vast." *Id.*

█ At the trial, the jury found that the Plaintiff failed to prove that the Suffolk County Park Department Police violated Title VII when it passed her over for a promotion to sergeant in favor of a male officer. Although the billing records are sufficiently detailed, the Court is unable to determine, with any acceptable degree of precision, what hours were devoted exclusively to the Plaintiff's failure to promote claim. However, the Court notes, from its own supervision of the case, that this claim figured prominently in this litigation. Accordingly, the Court finds that the Plaintiff's fee award should be reduced by 20% to reflect her partial success in this case.

What follows is a chart that summarizes the Court's conclusions regarding the reasonable hourly rates for and the number of hours reasonably expended by the Plaintiff's attorneys:

| Name | Reasonable Hourly Rate | Hours Reasonably Expended | Presumptively Reasonable Fee |
|---|---|---|---|
| Janice Goodman | $450 | 411.20 | $185,040 |
| Gillian Thomas | $300 | 204.25 | $ 61,275 |
| Naomi Shatz | $125 | 17.75 | $ 2,218.75 |
| Naveen Kabir | $125 | 18 | $ 2,250 |
| Jeltje DeJong | $200 | 41.90 | $ 8,380 |
| Kelly Wright | $200 | .40 | $ 80 |
| Total: | | | $259,243.75 |

When the presumptively reasonable fee award is adjusted to account for the 20% across-the-board reduction for partial success, the Court finds that the Plaintiff is entitled to attorneys' fees in the total amount of $207,395. The Plaintiff's unopposed application for costs in the amount of $12,581.98 is granted.

### III. CONCLUSION

The Plaintiff is awarded attorneys' fees in the amount of $148,032 for services rendered by Goodman and $52,595 for services performed by Legal Momentum. The Plaintiff is also awarded attorneys' fees in the amount of $6,768 for services rendered by Devitt Spellman Barrett LLP, for a total fee award of $207,395. In addition, the Plaintiff is awarded costs in the total amount of $12,581.98. The Clerk of the Court is directed to close this case.

**SO ORDERED.**